## Talbert v. Lincoln Speedway

*R. Elliot Katherman,* for plaintiff.
*James F. Carl,* for defendants.

SPICER, *P.J.* November 7, 1984—Plaintiff brought this action for damages for injuries suffered when he was struck by a race car driven by Douglas Devilbiss. The accident occurred in a pit area at Lincoln Speedway, which is owned and operated by

Thomas Livelsberger. Plaintiff paid ten dollars to view races from the pit area.

The accident occurred April 10, 1982, and suit was instituted August 19, 1983. A pre-trial conference was conducted May 24, 1984, and an order set November 21, 1984, as the trial date.

A release in futuro signed by plaintiff was discussed and counsel were requested to provide trial briefs.

A jury was selected in advance of the trial date. Following this, defendants moved for summary judgment.

Pennsylvania Rule of Civil Procedure 1035(a) permits the filing of the motion at any time after pleadings are closed so as not to delay trial. There will be no delay in this case. However, the advantages that usually attend disposition by summary judgment are not present in this case. We are sure both counsel are fully prepared for trial. The case has been pending since 1983. Depositions have been taken, documents have been produced, and interrogatories answered. About all that will be saved by the granting of the motion is a one day trial.

We resolve any doubts about whether there remain for disposition any genuine issues of fact in favor of the moving party. In this exercise, we consider that trial is imminent.

It is undisputed that plaintiff, before entering the pit area, signed a release absolving defendants from any liability. The record clearly indicates that Mr. Talbert had frequented the pit area in the past. He has visited the pit area several times a year for the past ten years, and was required to sign a release each and every time. He has said that lines of those entering were long and his opportunity to read the release restricted. He also has stated, in his reply,

that the release was folded in such a way as to hide the release when he signed.

The release is contained on a single sheet of letter-sized paper. The printed release occupies approximately the top one half of the sheet. Places for signatures occupy the remainder of the page. There are instructions for signing, which were not followed. A person was instructed to print his or her name and then sign. Instead, each signed and then added a number, the significance of which escapes us. Mr. Talbert was one of 30 persons signing the particular release on which his name appears. The number 6273 follows his name.

Although contracts against liability for negligence are not favored by the law, they are clearly valid, binding and enforceable in some situations. The test for determining validity includes the following:

(1) The agreement must be between persons, relate to their private affairs, and not contravene any policy of the law.*

(2) Each party must be a free bargaining agent and not simply one drawn into a contract of adhesion with no recourse but to reject the entire transaction.

(3) The agreement will be construed strictly against the party asserting it and

(4) The agreement must spell out the intent of the parties with the utmost particluarlity. 8 P.L.E. Contracts §107; Zimmer v. Mitchell and Ness, 253 Pa. Super. 474, 385 A.2d 437 (1978) aff'd per curiam 490 Pa. 428, 416 A.2d 1010 (1980).

Zimmer involved a skier injured when ski bindings failed to release. The contract of release

---

* Cases are collected in Leidy v. Deseret Enterprises, Inc., 252 Pa. Super. 162, 381 A.2d 164 (1977). Most concern public policy but some relate to contracts of adhesion as well. Summary judgment was refused in a situation involving a health spa.

specifically mentioned ski bindings. Summary judgment was granted.

The release in this case is virtually undistinguishable from one used in the case of Grbac v. Reading Fair Co., Inc., 521 F. Supp. 1351 (W.D., Pa. 1981) aff'd. 688 F.2d 215 (3d Cir. 1982). The fact situations are also almost identical. Summary judgment was also granted in Grbac.

There are no policy reasons, such as those found in Leidy, infra, to invalidate the release. The release passes all tests set out above. Therefore, unless plaintiff can escape its onus, he is bound by it.

His explanation that he did not read it does not, in the absence of fraud or a confidential relationship, extricate him from its operation. 8 P.L.E. Contracts, §83; 66 Am Jur.2d, Release §15; Standard Venetian Blind Company v. American Empire Insurance Co., 503 Pa. 300, 469 A.2d 563 (1983). However, his claim that the release was folded might be found by a jury to constitute fraud. See, Sexton v. Southwestern Auto Racing Association, 75 Ill. App. 3d 338, 31 Ill. Dec. 133, 394 N.E.2d 49 (1979). In that case, an Illinois appellate court, acting in almost this precise factual circumstance, reversed a dismissal of a complaint. See also, 15 P.L.E. Evidence §304, Suravitz v. Pristasz, 201 F. 335 (3d Cir. 1912); Haney v. Moorehead, 61 Pa. Super. 187, 177 Atl. 814 (1915).

This court will express no opinion about plaintiff's likelihood of success. We also do not decide whether his proof of fraud must be clear and convincing. Counsel should be prepared to address the burdens of the parties with respect to the release at time of trial.

## ORDER

And now, this November 7, 1984, the motion for summary judgment is refused.