1-95-0961

ANGELA E. WHITE, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellant, ) Cook County.
 )
 v. )
 ) 
VILLAGE OF HOMEWOOD, a Municipal ) 
Corporation, and VILLAGE OF HOMEWOOD ) 
FIRE AND POLICE COMMISSION, ) Honorable 
 ) Patrick E. McGann,
 Defendants-Appellees. ) Judge Presiding.


 PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
 This is the second appeal involving these parties. White v.
Village of Homewood, 256 Ill. App. 3d 354, 628 N.E.2d 616 (1993),
appeal denied, 155 Ill. 2d 577, 633 N.E.2d 16 (1994) (White I). In
White I, this court reversed the circuit court's order granting
defendants' motion to dismiss, and remanded the case with
instructions. The present appeal emanates from that remandment. 
 Plaintiff Angela White sued defendants, Village of Homewood
and Village of Homewood Fire and Police Commission (Homewood), for
injuries sustained in a fall from horizontal bars she was climbing
in pursuance of a firefighter's physical examination. The circuit
court granted Homewood's motion for summary judgment. White
appeals, arguing that a special duty exception to the Local
Governmental and Governmental Employees Tort Immunity Act (Tort
Immunity Act), if satisfied, would allow her to recover damages
from defendants, raising a genuine issue of material fact and
precluding summary judgment. 
 In 1990, White responded to an advertisement in a local
newspaper, which sought applicants for the position of firefighter
with the Homewood Fire Department. She completed an employment
application. She knew she would have to take a physical agility
test that applicants must pass in order to be considered for the
firefighter position. Just before taking the test, White signed an
agreement releasing Homewood from liability for any injuries that
might occur during the test. 
 On June 16, 1990, White and seventy-four other applicants
arrived at the Homewood Fire Department to take the physical
agility test. The test required applicants to display strength,
stamina, and the ability to perform under conditions resembling an
actual fire. There were several stations prepared for the exam at
which applicants were required to perform specific exercises. At
the first few stations, applicants performed sit-ups, squat thrusts
and chin-ups, and had to lift and carry a 200-pound dummy without
allowing any portion of the dummy to touch the ground. A fifth
exercise involved lifting and carrying a pail filled with rocks.
 At station number six the exercise involved climbing up a
vertical ladder, which intersected with a fifteen-foot-long
horizontal ladder, and then climbing across the horizontal ladder,
which was suspended approximately eight feet from the ground. 
During the exercise, White's hands slipped off the bars of one of
the ladders, and she fell several feet to a mat placed on the floor
under the ladders. White sustained injuries to her wrist and
elbow. 
 On December 10, 1990, White filed suit against Homewood,
alleging that Homewood's fire department conducted the physical
agility test in a negligent manner. On March 7, 1991, Homewood
moved to dismiss pursuant to section 2-615 of the Code of Civil
Procedure, (Ill. Rev. Stat. 1991, ch. 110, par. 2-615 (now at 735
ILCS 5/2-615 (West 1994))), for failing to plead facts
demonstrating the existence of a duty owed White, as well as a
breach of that duty.
 White subsequently filed an amended complaint containing four
counts and joining a second defendant, the Village of Homewood Fire
and Police Commission (Commission), which administered the
physical agility test. Homewood's second section 2-615 motion to
dismiss all counts was granted with respect to three of the four
counts, allowing White to pursue a claim only for ordinary
negligence.
 Homewood next filed a third motion to dismiss pursuant to
section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS
5/2-619 (West 1992), alleging that the release signed by White
before she took the physical agility test barred her claim. White
argued that Homewood furnished no consideration for the agreement,
rendering the release unenforceable. The circuit court granted the
motion, however, and dismissed White's claim with prejudice. On
appeal, this court reversed the circuit court's decision, holding
the release unenforceable for lack of consideration. This court
also found that the agreement violated public policy, in that
plaintiff was forced to sign it in order to take the physical
agility test, and the release placed White "at the mercy of her
potential employer's negligence." White I, 256 Ill. App. 3d at
359. The circuit court was instructed to reinstate the ordinary
negligence count.
 On remand, Homewood filed an answer and several affirmative
defenses. First, Homewood claimed that White's own negligence
proximately caused her injuries, entitling Homewood to a reduction
in any damages that might be awarded White, or no recovery at all. 
Additionally, Homewood referred to four sections of the Tort
Immunity Act, 745 ILCS 10/1-101 et seq. (West 1994) (Act), each of
which assertedly granted it immunity against White's claim.
 Homewood first looked to section 3-102(a) (745 ILCS 10/3-
102(a) (West 1994)) as a defense. Section 3-102(a) immunizes any
public entity against liability for injuries occurring on its
property, unless the public entity had actual or constructive
notice of the existence of an unreasonably unsafe condition on the
premises. Homewood argued that it had no actual or constructive
notice of any unreasonably dangerous condition at the fire station,
and that under this statute it could not be liable for White's
injury. 
 Homewood next offered section 3-108(a) as support for its
immunity argument. 745 ILCS 10/3-108(a) (West 1994). Section 3-
108(a) immunizes local public entities and public employees against
liability for injuries resulting from a "failure to supervise an
activity on or the use of any public property." Interpreting this
provision, Homewood contended that its administration of the
physical agility test constituted a supervisory function. As a
result, it could not be liable to White for any failure to properly
supervise her activities while taking the test. 
 Homewood also relied on section 2-201, taken together with
section 2-109, as additional support for its immunity defense. 745
ILCS 10/2-201 (West 1994). Section 2-201 grants public employees
immunity against liability for injuries resulting from an
employee's exercise of discretion, even when the discretion is
abused. Section 2-109 immunizes a public entity against liability
for any activities for which its employees would not be liable. 
745 ILCS 10/2-109 (West 1994). Homewood asserted that the
administration of the physical agility test was discretionary and
therefore immunized, precluding any liability to White for her
injuries. 
 Lastly, Homewood offered as support for its immunity argument
section 2-202 (745 ILCS 10/2-202 (West 1994)), which immunizes
public employees against liability for acts or omissions that occur
while executing and enforcing the law, unless the employee's
conduct is willful and wanton. Homewood claimed that this
provision applied to the present case because state law requires
the Commission to test the physical skills of all applicants to the
fire department. See 65 ILCS 5/10-1-7 (West 1995). Furthermore,
Homewood noted that it passed a regulation requiring a physical
agility test in order to enforce the state statute. Homewood
reasoned that it was executing and enforcing the state law and its
own regulation in administering the test, and that section 2-202,
considered with section 2-109, immunized Homewood against liability
for White's injuries.
 After raising these affirmative defenses, Homewood moved for
summary judgment. Because the Act precludes White from recovering
any damages, Homewood argued, it was entitled to judgment as a
matter of law. Alternatively, Homewood insisted that even if the
Act did not apply, summary judgment should be granted because the
danger of falling from the horizontal ladder was apparent, and
White viewed the apparatus before climbing and therefore could
appreciate the danger. Illinois law imposes no duty to warn White
of any apparent danger.
 White responded, arguing that all the cases cited by Homewood
in support of the motion were distinguishable and, in the
alternative, White posited that the language in those decisions
actually supported her position. White invoked the "special duty"
exception to the Act, recognized in Illinois case law.
 White also contended that public policy supported her
position. Even if the risk of danger from taking the physical
agility test was apparent, she was obligated to take the test in
order to become a firefighter, and needed the job because she was
out of work; because Homewood exerted full control over and
responsibility for the test, it should not be allowed to expose
applicants to "unnecessary dangers." Homewood knew when it created
the test that not all the applicants would be able to pass it or
even complete it; and Homewood had a duty to exercise reasonable
care and ensure that the test was safe for all applicants.
 Following a hearing on Homewood's motion for summary judgment,
the circuit court found that the conduct at issue could be
considered either discretionary or supervisory, concluded that the
Act applied, and granted Homewood's motion. At the hearing,
neither the parties nor the court addressed application of the
special duty exception to this case.
 I
 A reviewing court exercises de novo review when determining
whether the circuit court properly granted a motion for summary
judgment. Zoeller v. Augustine, 271 Ill. App. 3d 370, 374, 648
N.E. 2d 939 (1995). All evidence will be construed favorably to
the nonmoving party, and strictly against the moving party. Gatlin
v. Ruder, 137 Ill. 2d 284, 293, 560 N.E.2d 586 (1990); Soderlund
Brothers, Inc., v. Carrier Corp., 278 Ill. App. 3d 606, 614, 663
N.E.2d 1 (1996). Reversal is warranted if, on review of the case,
a material issue of fact or an inaccurate interpretation of the law
exists. Zoeller, 271 Ill. App. 3d at 374. 
 II
 The parties first dispute whether a genuine issue of material
fact exists regarding two elements of White's negligence claim. 
Homewood contends that White failed to establish that Homewood owed
White a duty, or that Homewood's alleged negligence proximately
caused White's injury. White insists that the record "clearly
reveals" the existence of issues of material fact.
 We need not decide this issue, however, because the Act
clearly precludes White from pursuing her claim, entitling Homewood
to judgment on the merits.
 III
 White presents a different approach in her argument on appeal
as to the application of the Act. When arguing before the circuit
court, White denied the application of the Act to her case. In her
response to Homewood's motion for summary judgment, White briefly
raised the issue of whether the special duty exception also
applied. On appeal, however, White apparently concedes the
relevance of the Act to this case; she does not even mention the
statute in her brief. Instead, White bases her argument solely on
the special duty exception. 
 In contrast, Homewood claims, as it did in its summary
judgment motion, that sections 2-201, 3-108(a), and 2-202 of the
Act each offer Homewood immunity against White's claim. White did
not file a reply brief addressing this argument.
 As Homewood succinctly notes in its brief, White waived the
question of the Act's application on this appeal by failing to
raise it in her brief. According to Supreme Court Rule 341(e)(7)
(134 Ill. 2d R. 341(e)(7)), any issues not raised by appellant in
her brief "are waived and shall not be raised in the reply brief,
in oral argument, or on petition for rehearing." Even if White had
properly raised this issue, however, both the language of the Act
and cases interpreting it establish that the Act controls this
case, and offers Homewood immunity absent an exception. 
 Section 2-201 of the Tort Immunity Act provides:
 "Except as otherwise provided by Statute, a
 public employee serving in a position
 involving the determination of policy or the
 exercise of discretion is not liable for an
 injury resulting from his act or omission in
 determining policy when acting in the exercise
 of such discretion even though abused." 745
 ILCS 10/2-201 (West 1994).
 This provision immunizes public officials from liability for
injuries caused by any acts that fall within their official
discretion. Anderson v. Village of Forest Park, 238 Ill. App. 3d
83, 92, 606 N.E.2d 205 (1992); Gavery v. County of Lake, 160 Ill.
App. 3d 761, 764, 513 N.E.2d 1127 (1987). This grant of immunity
to public officials is based upon the idea that public officials
should be allowed to exercise their judgment without fear that a
good faith mistake might subject them to a lawsuit. MidAmerica
Trust Co. v. Moffatt, 158 Ill. App. 3d 372, 376, 511 N.E.2d 964
(1987). In addition, under section 2-109 of the Act, the public
entity employing that official also will be held not liable for the
official's discretionary conduct. 745 ILCS 10/2-109 (West 1994). 
Therefore, if administration of the physical agility exam by the
Commission's employees is found to be discretionary, then under
sections 2-201 and 2-109 defendants cannot be liable to White for
her injuries.
 Discretionary acts include conduct unique to a particular
public office, and are not merely ministerial in nature. Gavery,
160 Ill. App. 3d at 764; MidAmerica, 158 Ill. App. 3d at 376. 
Discretionary acts require the exercise of judgment and skill, and
can be characterized as governmental. MidAmerica, 158 Ill. App. 3d
at 376. In contrast, ministerial acts involve conduct performed
according to a given state of facts and an established method. 
Ministerial conduct occurs in compliance with a legal mandate, and
without any reference to an official's discretion regarding the
appropriateness of the conduct. Anderson, 238 Ill. App. 3d at 94;
Greeson v. Mackinaw Township, 207 Ill. App. 3d 193, 200-01 (1990);
Gavery, 160 Ill. App. 3d at 764.
 In the present case, the administrators of the physical
agility examination are entitled to immunity under section 2-201. 
Their immunity also renders Homewood immune from liability under
section 2-109. The administrators of the examination acted
pursuant to legal authority. State law requires Homewood to make
rules establishing qualifications for the appointment of
firefighters. 65 ILCS 5/10-1-7 (West 1994). In carrying out that
authority, Homewood passed rules requiring all applicants for the
firefighter position to pass a physical agility examination in
addition to meeting other requirements. The administrators of
Homewood's firefighter's examination exercised discretion in
deciding the components of the exam, as well as the necessary level
of physical strength and stamina that would be required of each
applicant in order to pass the test. The administrators also used
personal judgment in deciding the number and complexity of physical
skills that applicants must master. This exercise of independent
judgment qualifies as discretionary, and section 2-201 provides
immunity for these discretionary actions. 
 In light of our disposition set forth above we need not
consider the applicability of sections 2-202 and 3-108(a) to these
facts.
 White argues nevertheless that Homewood's conduct in
administering the physical agility test renders it liable under the
special duty exception to the Act. Homewood counters this argument
by claiming that White did not establish all the requisite elements
of the exception. Alternatively, Homewood contends that the
special duty exception cannot be applied to this case because the
Act does not incorporate the exception within its terms.
 The special duty doctrine is a common law exception to the
concept of governmental immunity. Burdinie v. Village of Glendale
Heights, 139 Ill. 2d 501, 507, 565 N.E.2d 654 (1990), overruled in
part, McCuen v. Peoria Park District, 163 Ill. 2d 125, 643 N.E.2d
778 (1994). A common law principle applied in conjunction with the
Act states that municipalities cannot be held liable in tort to
members of the general public for negligently exercising municipal
authority for a governmental purpose. Burdinie, 139 Ill. 2d at
507-08. The special duty rule, however, provides that where a
special relationship arises between the municipality and a specific
person, the municipality will owe a special duty toward that person
and can be liable for the negligent failure to carry out that duty. 
139 Ill. 2d at 508. 
 A special duty has been found to exist where a plaintiff meets
four requirements: (1) the municipality must be uniquely aware of
the particular danger or risk to which plaintiff is exposed; (2)
plaintiff must allege specific acts or omissions on the part of the
municipality; (3) the specific acts or omissions must be
affirmative or willful in nature; and (4) the injury must occur
while plaintiff is under the direct and immediate control of
employees or agents of the municipality. Burdinie, 139 Ill. 2d at
508; Galuszynski v. City of Chicago, 131 Ill. App. 3d 505, 507, 475
N.E.2d 960 (1985); Bell v. Village of Midlothian, 90 Ill. App. 3d
967, 970, 414 N.E.2d 104 (1980).
 White urges that because Homewood designed the physical
agility test, arranged the equipment used to take the test, and
placed a mat underneath the horizontal ladder, it proved its unique
awareness of the dangerousness of the test. In addition, White
offers several examples of specific acts or omissions on the part
of the Commission: it required the five female applicants to take
the same physical fitness test as the seventy male applicants; it
required plaintiff to perform several upper body strength tests
consecutively without allowing her adequate time to rest between
each test; it placed the horizontal ladder nine feet above the
ground; it failed to warn White that the bars were dangerous and
unsafe; and it allowed White to use the horizontal bars when it
knew or should have known the bars were dangerous and unsafe. 
White claims these actions constituted affirmative or willful
conduct. Lastly, White maintains that her injury occurred while
she was under the direct and immediate control of employees or
agents of the Commission.
 The cases cited by White as support for her argument contain
facts significantly dissimilar from the present case. In Gardner
v. Village of Chicago Ridge, 71 Ill. App. 2d 373, 219 N.E.2d 147
(1966), for instance, plaintiff called the police after four men
attacked and beat him. The police officers apprehended the men on
a local highway and brought plaintiff there to identify them. The
men then attacked plaintiff again in the presence of the police
officers. 71 Ill. App. 2d at 375. The Gardner court explained
that by bringing plaintiff to the place where they apprehended the
men and placing plaintiff in a "position of peril," the police owed
plaintiff a special duty. The court held that the police breached
this duty by failing to restrain the men from attacking plaintiff.
71 Ill. App. 2d at 378-80. 
 A municipality was found liable when police officers imposed
unreasonably dangerous risks upon a private citizen in Brooks v.
Lundeen, 49 Ill. App. 3d 1, 7, 364 N.E.2d 423 (1977). There,
police officers set up a road block in order to catch a car
traveling at speeds of 85 to 100 miles an hour. The officers
ordered plaintiff's decedent, who drove up to the roadblock, to
park his car on the shoulder, but did not tell him why he needed to
do so. A few minutes later, the speeding car collided with
decedent's car on the shoulder, killing him. 49 Ill. App. 3d at 4-
5. The Brooks court held that plaintiff presented sufficient
evidence for a jury to find the existence of a special duty owed
plaintiff's decedent and a violation of that duty. Specifically,
the court pointed to the fact that the officers failed to warn
decedent of the dangerous situation and failed to allow him to
choose to park in a safer place. 49 Ill. App. 3d at 7. More
recently, this court similarly concluded that firefighters who
"instructed, directed, and encouraged" plaintiff, who had no
experience or training in fighting fires, to aid them in opening an
elevator door in a burning building, owed a special duty to
plaintiff. Anthony v. City of Chicago, 168 Ill. App. 3d 733, 738,
523 N.E.2d 22, appeal denied, 123 Ill. 2d 555, 535 N.E.2d 398
(1988). The court held that the City of Chicago, which employed
the firefighters, would be liable to plaintiff for any injuries
resulting from a breach of that duty. 
 The most significant distinction between the facts of Gardner,
Brooks, and Anthony and the facts in the present case is the
voluntary nature of plaintiff's actions. In the former, a police
officer or other governmental official in a position of authority
ordered plaintiff to take specific actions. In the present case,
however, White voluntarily agreed to take the physical agility
test. Furthermore, in Gardner, Brooks, and Anthony, plaintiffs
established the first element of the special duty exception by
showing that defendants possessed information about the situation
that they did not share, and that the injured parties could not
have obtained. In Gardner, the police officers did not tell
plaintiff that the men who attacked him had not yet been handcuffed
or otherwise restrained and still posed a threat to plaintiff. 
Similarly, in Brooks, the police officers did not tell plaintiff's
decedent that a dangerous, speeding car was approaching the
intersection. Moreover, in Anthony, the firefighters did not
explain to plaintiff the skills that might be necessary to perform
the job of firefighting. In contrast, in the case sub judice,
White clearly could see the height of the ladder and the thickness
of the mat beneath the ladder. She faced no hidden danger such as
a speeding car, an aggressive man, or a dangerous fire. Because of
the voluntary nature of her actions and the lack of any hidden
potential for injury, White cannot prove that Homewood placed her
in an unreasonably dangerous situation or "position of peril."
 The fact that the Commission developed and set up the physical
agility test may have made the Commission more knowledgeable about
the equipment being used, but does not establish that Homewood was
uniquely aware of any particular danger to White. "Superior
knowledge, in and of itself, does not create a duty." Burdinie,
139 Ill. 2d at 522. In Burdinie, plaintiff registered to
participate in adult swimming classes at defendant's recreational
sports complex. At the instructor's direction, plaintiff jumped
into the shallow end of the pool, suffering injuries. 139 Ill. 2d
at 505. Plaintiff argued that the instructor, with his superior
knowledge and experience, should have known to instruct a beginning
swimmer that jumping into a shallow end of the pool was dangerous. 
The Burdinie court disagreed, declaring that such a rule would
allow the special duty exception to swallow the general rule of
nonliability. The court noted that if this rule became law, any
municipality that employed someone with superior knowledge or
experience would be held liable for injuries arising from any
instructions related to the employee's expertise. 139 Ill. 2d at
522. 
 In addition, the Burdinie court found that plaintiff failed to
satisfy the fourth requirement of the special duty exception, that
plaintiff suffered injuries while under the direct control of
defendant. 139 Ill. 2d at 525. The court held that although the
swimming instructor occupied a position of responsibility, he did
not exercise direct and immediate control over plaintiff. The
court distinguished cases such as Anthony, Gardner, and Brooks,
noting that those decisions involved police or fire protection. In
such cases, the municipal employees by their nature are cloaked
with state authority, making any refusal to obey an order or
suggestion very difficult for the average citizen. The court noted
that a recreational swimming instructor did not enjoy the same
authority, and plaintiff easily could have refused to jump in the
pool. 139 Ill. 2d at 525. The Burdinie court distinguished those
cases by pointing out the voluntary nature of plaintiff's actions,
in contrast to the involuntary nature of plaintiffs' actions in
Anthony, Gardner, and Brooks. 
 The present case parallels Burdinie. White voluntarily took
the physical agility test and could have refused to take any
portion of the test if she wished. As in Burdinie, she failed to
offer evidence that the horizontal ladder was particularly
dangerous, other than to point out that it rose eight to nine feet
above the floor and that there was a 3-inch mat underneath. As in
Burdinie, the height of the ladder and the thickness of the mat do
not exhibit the level of danger found in the Anthony, Gardner, and
Brooks decisions. In addition, under Burdinie, Homewood cannot be
held liable simply because its employees set up the test and
instructed White on how to take it.
 White does not allege that she involuntarily applied for the
firefighter position and does not show that she could not obtain
another, less dangerous job. She eagerly and voluntarily applied
for the firefighter position, knowing that it might be a dangerous
job. White also knew from reading the notice advertising the
position that she would be required to take a test to prove she was
physically capable of handling the dangers inherent in the
position. White has failed to show that she was compelled in any
way to take the physical agility test and therefore may not invoke
the special duty exception. The Act prevents her from pursuing her
claim. The circuit court properly granted Homewood's motion for
summary judgment as a matter of law because White may not recover
any damages from Homewood resulting from her injuries.
 For the reasons aforesaid we must affirm.
 Affirmed.
 SCARIANO and DiVITO, JJ., concur.